James-Francis: Murphy
In Care of Postal Department 234277
Encinitas, California 92023-4277
Tel: 760-230-2868
In Propria Persona

NUNC PRO TUNC
AUG 15 2008

FILED
AUG 27 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. - 08 CR 1196 W |
|     PLAINTIFF, ) | |
|     v. ) | NOTICE OF CREATION OF |
| JAMES FRANCIS MURPHY ) | IMPOSSIBILITY OF LAW BY |
|     Defendant, ) | STATE OF CALIFORNIA |
| ) | |
| _____ ) | Magistrate Judge Nina Stormes |
| James-Francis: Murphy ) | August 21, 2008 at 9:30am |
|     Third Party Intervener, ) | |
|     Real Party in Interest, ) | Attached: Public Law 414 information |
|     Authorized Representative ) | seven pages total |

Substantive law in this court is regulated by state law.

"Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State, whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts. As stated by Mr. Justice Field when protesting in *Baltimore & Ohio R. Co. v.*

*Baugh,* 149 U. S. 368, 149 U. S. 401, against ignoring the Ohio common law of fellow servant liability:

"I am aware that what has been termed the general law of the country -- which is often little less than what the judge advancing the doctrine thinks at the time should be the general law on a particular subject -- has been often advanced in judicial opinions of this court to control a conflicting law of a State. I admit that learned judges have fallen into the habit of repeating this doctrine as a convenient mode of brushing aside the law of a State in conflict with their views. And I confess that, moved and governed by the authority of the great names of those judges, I have, myself, in many instances, unhesitatingly and confidently, but I think now erroneously, repeated the same doctrine. But, notwithstanding the great names which may be cited in favor of the doctrine, and notwithstanding the frequency with which the doctrine has been reiterated, there stands, as a perpetual protest against its repetition, the Constitution of the United States, which recognizes and preserves the autonomy and independence of the States -- independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the States is in no case permissible except as to matters by the Constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the State and, to that extent, a denial of its independence." **ERIE RAILROAD CO. v. TOMPKINS, 304 US 78, 79 (1938).**

The people of the State of California are the ultimate sovereigns; see **People v. Brisendine, 13 Cal.3d 528**

1  James-Francis: Murphy (AR) elected to operate within his deeply held religious and

2  spiritual unalienable Rights protected by both the State Constitution (C.E. 1849) and the

3  Constitution for the United States of America (C.E. 1787). Therefore AR operates

4  without benefit of the Social Security agreement and benefits therein.

5  James-Francis: Murphy elected to operate with a State of California identification

6  document, or in the alternative, a State of Nebraska issued Driver's license, but with the

7  proviso of doing so without operating within the Social Security program. State of

8  California elected to force him to participate in the Social Security program in violation of

9  his religious convictions in accord with Stevens v. Berger, 428 F. Supp. 896 (E.D.N.Y.

10 1977) and thereafter he could not obtain a driver's license or state issued identification.

11 After having researched Public Law 414, 1952 he discovered that he had his own

12 remedy of creating his own travel documents, which State of California Secretary of

13 State acknowledged and approved by tacit procuration/agreement. Thereafter, in accord

14 with his religious convictions of being an Ambassador of Christ he traveled with his own

15 remedy. That is one of the issues laying before this court and the Trier of Fact as to

16 mens rea on said self remedy.

17 Without availability of said self remedy found at P.L. 414, 1952, Section 222, Page 193,

18 AR is without remedy and an impossibility has been created.

19 Respectfully submitted August 15, 2008,

20 
21 James-Francis: Murphy,
22 Authorized Representative
23

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | |
| 3 | COPY of the forgoing hand delivered, |
| 4 | This 15th day of August, 2008, to: |
| 5 | U. S. Assistant Attorney Fred Sheppard |
| 6 | 880 Front Street Room 6293 |
| 7 | San Diego, CA |
| 8 | 619-557-5610 |
| 9 | |
| 10 | _____ |
| 11 | |
| 12 | |
| 13 | Service performed by: |
| 14 | |
| 15 | |
| 16 | |
| 17 | James-Francis: Murphy |
| 18 | In Care of Postal Department 234277 |
| 19 | Encinitas, California  92023-4277 |
| 20 | Tel:760-230-2868 |

Public Law 414                                    CHAPTER 477
AN ACT                                         June 27, 1952
                                               [H. R. 5678]
To revise the laws relating to immigration, naturalization, and nationality;
    and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act, divided into titles, chapters, and sections according to the following table of contents, may be cited as the "Immigration and Nationality Act".

Immigration and Nationality Act.

## TABLE OF CONTENTS

### TITLE I—GENERAL

Sec. 101. Definitions.
Sec. 102. Applicability of title II to certain nonimmigrants.
Sec. 103. Powers and duties of the Attorney General and the Commissioner.
Sec. 104. Powers and duties of the Secretary of State; Bureau of Security and Consular Affairs.
Sec. 105. Liaison with internal security officers.

### TITLE II—IMMIGRATION

#### CHAPTER 1—QUOTA SYSTEM

Sec. 201. Numerical limitations: annual quota based upon national origin; minimum quotas.
Sec. 202. Determination of quota to which an immigrant is chargeable.
Sec. 203. Allocation of immigrant visas within quotas.
Sec. 204. Procedure for granting immigrant status under section 101 (a) (27) (F) (i) or 203 (a) (1) (A).
Sec. 205. Procedure for granting nonquota status or preference by reason of relationship.
Sec. 206. Revocation of approval of petitions.
Sec. 207. Unused quota immigrant visas.

#### CHAPTER 2—QUALIFICATIONS FOR ADMISSION OF ALIENS; TRAVEL CONTROL OF CITIZENS AND ALIENS

Sec. 211. Documentary requirements.
Sec. 212. General classes of aliens ineligible to receive visas and excluded from admission.
Sec. 213. Admission of aliens on giving bond or cash deposit.
Sec. 214. Admission of nonimmigrants.
Sec. 215. Travel control of aliens and citizens in time of war or national emergency.

#### CHAPTER 3—ISSUANCE OF ENTRY DOCUMENTS

Sec. 221. Issuance of visas.
Sec. 222. Applications for visas.
Sec. 223. Reentry permits.
Sec. 224. Nonquota immigrant visas.

#### CHAPTER 4—PROVISIONS RELATING TO ENTRY AND EXCLUSION

Sec. 231. Lists of aliens and citizen passengers arriving or departing; record of resident aliens and citizens leaving permanently for foreign country.
Sec. 232. Detention of aliens for observation and examination.
Sec. 233. Temporary removal for examination upon arrival.
Sec. 234. Physical and mental examination.
Sec. 235. Inspection by immigrant officers.
Sec. 236. Exclusion of aliens.
Sec. 237. Immediate deportation of aliens excluded from admission or entering in violation of law.
Sec. 238. Entry through or from foreign contiguous territory and adjacent islands; landing stations.
Sec. 239. Designation of ports of entry for aliens arriving by civil aircraft.
Sec. 240. Records of admission.

#### CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS

Sec. 241. General classes of deportable aliens.
Sec. 242. Apprehension and deportation of aliens.

TABLE OF CONTENTS—Continued

TITLE III—NATIONALITY AND NATURALIZATION—Continued

CHAPTER 3—LOSS OF NATIONALITY—Continued

Sec. 352. Loss of nationality by naturalized national.
Sec. 353. Section 352 not effective as to certain persons.
Sec. 354. Section 352 (a) (2) not effective as to certain persons.
Sec. 355. Loss of American nationality through parent's expatriation; not effective until person attains age of twenty-five years.
Sec. 356. Nationality lost solely from performance of acts or fulfillment of conditions.
Sec. 357. Application of treaties; exceptions.

CHAPTER 4—MISCELLANEOUS

Sec. 358. Certificate of diplomatic or consular officer as to loss of American nationality.
Sec. 359. Certificate of nationality for a person not a naturalized citizen for use in proceedings of a foreign state.
Sec. 360. Judicial proceedings for declaration of United States nationality in event of denial of rights and privileges as national.

TITLE IV—MISCELLANEOUS

Sec. 401. Joint Congressional Committee.
Sec. 402. Amendments to other laws.
Sec. 403. Laws repealed.
Sec. 404. Authorization of appropriations.
Sec. 405. Savings clauses.
Sec. 406. Separability.
Sec. 407. Effective date.

# TITLE I—GENERAL

### DEFINITIONS

SECTION 101. (a) As used in this Act—

(1) The term "administrator" means the administrator of the Bureau of Security and Consular Affairs of the Department of State.

(2) The term "advocates" includes, but is not limited to, advises, recommends, furthers by overt act, and admits belief in.

"Alien."  (3) The term "alien" means any person not a citizen or national of the United States.

(4) The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

(5) The term "Attorney General" means the Attorney General of the United States.

(6) The term "border crossing identification card" means a document of identity bearing that designation issued to an alien who is lawfully admitted for permanent residence, or to an alien who is a resident in foreign contiguous territory, by a consular officer or an immigration officer for the purpose of crossing over the borders between the United States and foreign contiguous territory in accordance with such conditions for its issuance and use as may be prescribed by regulations.

(7) The term "clerk of court" means a clerk of a naturalization court.

(8) The terms "Commissioner" and "Deputy Commissioner" mean the Commissioner of Immigration and Naturalization and a Deputy Commissioner of Immigration and Naturalization, respectively.

(9) The term "consular officer" means any consular, diplomatic, or other officer of the United States designated under regulations prescribed under authority contained in this Act, for the purpose of issuing immigrant or nonimmigrant visas. In cases of aliens, in the

66 STAT.]     PUBLIC LAW 414—JUNE 27, 1952     169

mation media, who seeks to enter the United States solely to engage in such vocation, and the spouse and children of such a representative, if accompanying or following to join him.

(16) The term "immigrant visa" means an immigrant visa required by this Act and properly issued by a consular officer at his office outside of the United States to an eligible immigrant under the provisions of this Act.

(17) The term "immigration laws" includes this Act and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, or expulsion of aliens.

(18) The term "immigration officer" means any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this Act or any section thereof.

(19) The term "ineligible to citizenship," when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3 (a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4 (a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76), or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts.    *50 USC app. 303, 454.*

(20) The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

(21) The term "national" means a person owing permanent allegiance to a state.    *"National."*

(22) The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.

(23) The term "naturalization" means the conferring of nationality of a state upon a person after birth, by any means whatsoever.

(24) The term "naturalization court", unless otherwise particularly described, means a court authorized by section 310 (a) of title III to exercise naturalization jurisdiction.

(25) The term "noncombatant service" shall not include service in which the individual is not subject to military discipline, court martial, or does not wear the uniform of any branch of the armed forces.

(26) The term "nonimmigrant visa" means a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this Act.

(27) The term "nonquota immigrant" means—

   (A) an immigrant who is the child or the spouse of a citizen of the United States;

   (B) an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad;

   (C) an immigrant who was born in Canada, the Republic of Mexico, the Republic of Cuba, the Republic of Haiti, the Dominican Republic, the Canal Zone, or an independent country of Central or South America, and the spouse or the child of any such immigrant, if accompanying or following to join him;

   (D) an immigrant who was a citizen of the United States and may, under section 324 (a) or 327 of title III, apply for reacquisition of citizenship;

dictatorship or totalitarianism. The terms "totalitarian dictatorship" and "totalitarianism" mean and refer to systems of government not representative in fact, characterized by (A) the existence of a single political party, organized on a dictatorial basis, with so close an identity between such party and its policies and the governmental policies of the country in which it exists, that the party and the government constitute an indistinguishable unit, and (B) the forcible suppression of opposition to such party.

(38) The term "United States", except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States.

(39) The term "unmarried", when used in reference to any individual as of any time, means an individual who at such time is not married, whether or not previously married.

(40) The term "world communism" means a revolutionary movement, the purpose of which is to establish eventually a Communist totalitarian dictatorship in any or all the countries of the world through the medium of an internationally coordinated Communist political movement.

(b) As used in titles I and II—

(1) The term "child" means an unmarried person under twenty-one years of age who is—

    (A) a legitimate child; or

    (B) a stepchild, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred; or

    (C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

(2) The terms "parent", "father", or "mother" mean a parent, father, or mother only where the relationship exists by reason of any of the circumstances set forth in (1) above.

(3) The term "person" means an individual or an organization.

(4) The term "special inquiry officer" means any immigration officer who the Attorney General deems specially qualified to conduct specified classes of proceedings, in whole or in part, required by this Act to be conducted by or before a special inquiry officer and who is designated and selected by the Attorney General, individually or by regulation, to conduct such proceedings. Such special inquiry officer shall be subject to such supervision and shall perform such duties, not inconsistent with this Act, as the Attorney General shall prescribe.

(5) The term "adjacent islands" includes Saint Pierre, Miquelon, Cuba, the Dominican Republic, Haiti, Bermuda, the Bahamas, Barbados, Jamaica, the Windward and Leeward Islands, Trinidad, Martinique, and other British, French, and Netherlands territory or possessions in or bordering on the Caribbean Sea.

(c) As used in title III—

(1) The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, except as otherwise provided in sections 320, 321, 322, and 323 of title III, a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of sixteen years, and the

residents thereof having a common nationality with such nationals, or (C) in the case of aliens proceeding in immediate and continuous transit through the United States under contracts authorized in section 238 (d).

*Parole of aliens.* (5) The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

(6) The Attorney General shall prescribe conditions, including exaction of such bonds as may be necessary, to control and regulate the admission and return of excludable aliens applying for temporary admission under this subsection. *Report to Congress.* The Attorney General shall make a detailed report to the Congress in any case in which he exercises his authority under paragraph (3) of this subsection on behalf of any alien excludable under paragraphs (9), (10), and (28) of subsection (a).

(7) The provisions of subsection (a) of this section, except paragraphs (20), (21), and (26), shall be applicable to any alien who shall leave Hawaii, Alaska, Guam, Puerto Rico, or the Virgin Islands of the United States, and who seeks to enter the continental United States or any other place under the jurisdiction of the United States: *Provided,* That persons who were admitted to Hawaii under the last sentence of section 8 (a) (1) of the Act of March 24, 1934, as amended (48 Stat. 456), and aliens who were admitted to Hawaii as nationals of the United States shall not be excepted by this paragraph from the application of paragraphs (20) and (21) of subsection (a) of this section, unless they belong to a class declared to be nonquota immigrants under the provisions of section 101 (a) (27) of this Act, other than subparagraph (C) thereof, or unless they were admitted to Hawaii with an immigration visa. The Attorney General shall by regulations provide a method and procedure for the temporary admission to the United States of the aliens described in this proviso. Any alien described in this paragraph, who is excluded from admission to the United States, shall be immediately deported in the manner provided by section 237 (a) of this Act.

(8) Upon a basis of reciprocity accredited officials of foreign governments, their immediate families, attendants, servants, and personal employees may be admitted in immediate and continuous transit through the United States without regard to the provisions of this section except paragraphs (26), (27), and (29) of subsection (a) of this section.

*Suspension of entry by President.* (e) Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

ADMISSION OF ALIENS ON GIVING BOND OR CASH DEPOSIT

SEC. 213. Any alien excludable because he is likely to become a public charge or because of physical disability other than tuberculosis in any form, leprosy, or a dangerous contagious disease may, if other-

wise admissible, be admitted in the discretion of the Attorney General upon the giving of a suitable and proper bond or undertaking approved by the Attorney General, in such amount and containing such conditions as he may prescribe, to the United States and to all States, Territories, counties, towns, municipalities, and districts thereof holding the United States and all States, Territories, counties, towns, municipalities, and districts thereof harmless against such alien becoming a public charge. In lieu of such bond such alien may deposit in cash with the Attorney General such amount as the Attorney General may require, which amount shall be deposited by him in the United States Postal Savings System, a receipt therefor to be given the person furnishing such sums showing the fact and object of its receipt and such other information as the Attorney General may deem advisable. All accruing interest on such deposit during the time it shall be held in the United States Postal Savings System shall be paid to the person furnishing such sum. In the event such alien becomes a public charge, the Attorney General shall dispose of such deposit in the same manner as if it had been collected under a bond as provided in this section. In the event of the permanent departure from the United States, the naturalization, or the death of such alien, such sum shall be returned to the person by whom furnished, or to his legal representatives. The admission of such alien shall be a consideration for the giving of such bond, undertaking, or cash deposit. Suit may be brought thereon in the name and by the proper law officers of the United States for the use of the United States, or of any State, Territory, district, county, town, or municipality in which such alien becomes a public charge.

### ADMISSION OF NONIMMIGRANTS

SEC. 214. (a) The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe, including when he deems necessary the giving of a bond with sufficient surety in such sum and containing such conditions as the Attorney General shall prescribe, to insure that at the expiration of such time or upon failure to maintain the status under which he was admitted, or to maintain any status subsequently acquired under section 248, such alien will depart from the United States.

(b) Every alien shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 101 (a) (15). An alien who is an officer or employee of any foreign government or of any international organization entitled to enjoy privileges, exemptions, and immunities under the International Organizations Immunities Act, or an alien who is the attendant, servant, employee, or member of the immediate family of any such alien shall not be entitled to apply for or receive an immigrant visa, or to enter the United States as an immigrant unless he executes a written waiver in the same form and substance as is prescribed by section 247 (b). *59 Stat. 669. 22 USC 288 note.*

(c) The question of importing any alien as a nonimmigrant under section 101 (a) (15) (H) in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer. Such petition shall be made and approved before the visa is granted. The petition shall be in such form and contain such information as the Attorney General shall prescribe. The approval *Petition by importing employer.*

APPLICATIONS FOR VISAS

Sec. 222. (a) Every alien applying for an immigrant visa and for alien registration shall make application therefor in such form and manner and at such place as shall be by regulations prescribed. In the application the immigrant shall state his full and true name, and any other name which he has used or by which he has been known: age and sex; race and ethnic classification; the date and place of his birth; present address and places of previous residence; whether married or single, and the names and places of residence of spouse and children, if any; calling or occupation; personal description (including height, complexion, color of hair and eyes, and marks of identification); languages he can speak, read, or write; names and addresses of parents, and if neither parent living, then the name and address of his next of kin in the country from which he comes; port of entry into the United States; final destination, if any, beyond the port of entry; whether he has a ticket through to such final destination; whether going to join a relative or friend, and, if so, the name and complete address of such relative or friend; the purpose for which he is going to the United States; the length of time he intends to remain in the United States; whether or not he intends to remain in the United States permanently; whether he was ever arrested, convicted or was ever in prison or almshouse; whether he has ever been the beneficiary of a pardon or an amnesty; whether he has ever been treated in an institution or hospital or other place for insanity or other mental disease; if he claims to be a preference quota or a nonquota immigrant, the facts on which he bases such claim; whether or not he is a member of any class of individuals excluded from admission into the United States, or whether he claims to be exempt from exclusion under the immigration laws; and such additional information necessary to the identification of the applicant and the enforcement of the immigration and nationality laws as may be by regulations prescribed.

(b) Every alien applying for an immigrant visa shall present a valid unexpired passport or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Secretary of State. The immigrant shall furnish to the consular officer with his application two copies of a certification by the appropriate police authorities stating what their records show concerning the immigrant; two certified copies of any existing prison record, military record, and record of his birth; and two certified copies of all other records or documents concerning him or his case which may be required by the consular officer. One copy of each document so furnished shall be permanently attached to each copy of the application and become a part thereof. In the event that the immigrant establishes to the satisfaction of the consular officer that any document or record required by this subsection is unobtainable, the consular officer may permit the immigrant to submit in lieu of such document or record other satisfactory evidence of the fact to which such document or record would, if obtainable, pertain.

(c) Every alien applying for a nonimmigrant visa and for alien registration shall make application therefor in such form and manner as shall be by regulations prescribed. In the application the alien shall state his full and true name, the date and place of birth, his nationality, his race and ethnic classification; the purpose and length of his intended stay in the United States; personal description (including height, complexion, color of hair and eyes, and marks of identification); his marital status; and such additional information necessary to the identification of the applicant and the enforcement of the immigration and nationality laws as may be by regulations prescribed.