1  James-Francis: Murphy,
2  In Care of Postal Department 234277
3  Encinitas, California 92023-4277
4  Tel: 760-230-2868
5  In Propria Persona

**NUNC PRO TUNC**

AUG 2 5 2008

FILED
08 AUG 27 AM 9:31
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) <br> PLAINTIFF, ) <br> v. ) <br> JAMES FRANCIS MURPHY ) <br> Defendant, ) <br> ) <br> ) <br> _____ ) <br> James-Francis: Murphy ) <br> Third Party Intervener, ) <br> Real Party in Interest, ) <br> Authorized Representative ) <br> ) <br> ) | CASE NO. - 08 CR 1196 W <br><br> **EXHIBIT 28** <br><br> **THE CORSAIR** <br> **145 U.S. 335(1892)** <br><br><br> Magistrate Judge Nita L. Stormes <br> August 26, 2008 at 9:30am <br><br> Judge Thomas J. Whelan <br> September 8, 2008 at 2:00pm and <br> September 30, 2008 at 9:00am |

Total pages of **EXHIBIT 28** attached- five (5)

James Francis Murphy, AR, appears and presents this exhibit for the court for submission into evidence now and/or at trial.

Respectfully submitted August 25, 2008,

_____
James-Francis: Murphy,
Authorized Representative

08/08/21 [Exhibit 28] — Page 1 of 2

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | |
| 3 | COPY of the forgoing hand delivered, |
| 4 | This 15 day of August, 2008, to: |
| 5 | U. S. Assistant Attorney Fred Sheppard |
| 6 | 880 Front Street Room 6293 |
| 7 | San Diego, CA |
| 8 | 619-557-5610 |
| 9 | |
| 10 | _____ |
| 11 | |
| 12 | |
| 13 | Service performed by: |
| 14 | |
| 15 | |
| 16 | [signature] |
| 17 | James-Francis: Murphy |
| 18 | In Care of Postal Department 234277 |
| 19 | Encinitas, California a 92023-4277 |
| 20 | Tel: 760-230-2868 |

US Supreme Court Center> US Supreme Court Cases & Opinions> Volume 145 > THE CORSAIR, 145 U. S. 335 (1892)

## THE CORSAIR, 145 U. S. 335 (1892)

Subscribe to Cases that cite 145 U. S. 335

Google                              [ Search Cases ]

**Free Cobranding of the US Supreme Court Center**
Link to Cases & Search with Linkback and Cobranding - **Lean More**

Link to the Case Preview: http://supreme.justia.com/us/145/335/

Link to the Full Text of Case: http://supreme.justia.com/us/145/335/case.html

# U.S. Supreme Court

## The Corsair, 145 U.S. 335 (1892)

**The Corsair**

**No. 344**

**Submitted April 26, 1892**

**Decided May 16, 1892**

**145 U.S. 335**

*APPEAL FROM THE CIRCUIT COURT OF THE UNITED*

*STATES FOR THE EASTERN DISTRICT OF LOUISIANA*

*Syllabus*

Admiralty Rules 12 to 20 inclusive allow, in certain cases, a joinder of ship and freight, or ship and master, or alternative actions against ship, master, or owner alone, but in no case within the rules can ship and owner

Page 145 U. S. 336

be joined in the same libel; whether they may in cases not falling within the rules is not decided.

A district court sitting in admiralty cannot entertain a libel *in rem* for damages incurred by loss of life where, by the local law, a right of action survives to the administrator or relatives of the deceased but no lien is expressly created by the act.

When the collision of two vessels causes great pain and suffering to a passenger on one of them, followed so closely by death as to be substantially contemporaneous with it, a libel *in rem*, where a right of action exists under a state statute, will not lie for those injuries, as distinguished from death as a cause of action.

The Court stated the case as follows:

This was an appeal from a decree of the circuit court dismissing a libel for damages sustained by the death of Ella Barton against the steam tug

Corsair and her owners. Suit was begun on April 5, 1888, by the filing of a libel by Edward S. Barton and Elizabeth Barton, his wife, against the steam tug Corsair upon two distinct causes of action, viz., one for damages for the pains and suffering endured by Ella Barton, a daughter of the said Elizabeth Barton, in a collision caused by the said tug Corsair, on which the said Ella Barton was at the time a passenger, running at full speed into the right bank of the Mississippi River on the 14th of April, 1887 at a point about ten miles above Algiers, which is opposite the City of New Orleans, in consequence of which said tug filled with water and sank in ten minutes. The other cause for action was for damages sustained by the said Elizabeth Barton in the loss of the life of her said daughter, alleged to have been caused by the negligence of the officers and crew of the tug.

The right to bring this libel was alleged to have accrued under Article 2315 of the Revised Civil Code of Louisiana, as amended in 1884, which reads as follows:

"Article 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the right of this action shall survive, in case of death, in favor of the minor children or widow of the deceased or either of them, and, in default of these, in favor of

Page 145 U. S. 337

the surviving father and mother, or either of them, for the space of one year from the death. The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife, as the case may be."

By virtue of an attachment issued upon this libel, the vessel was arrested April 5, 1888, and was released upon a stipulation given by Samuel S. Brown and Harry Brown, by their duly authorized agent, "claimants and owners of the steam tug Corsair." Upon the same day, they filed their claim as owners, averring that "no other persons have any interest therein," and subsequently filed exceptions to the libel upon the ground that it set forth no cause of action cognizable by proceedings in rem in admiralty. Upon the hearing of these exceptions, the court,

"considering that no action in rem lies in this case, . . . ordered that the exception be sustained to the extent of releasing the tug Corsair from the seizure made under the admiralty warrant issued in the cause, the court being of the opinion that the statute of Louisiana creates no lien upon the vessel."

It was

"further ordered that libelants be allowed to amend their pleadings and proceed in personam against the owners of the vessel within ten days if they see fit."

On the following day, an amended libel was filed against Samuel S. Brown and Harry Brown in personam, as "owners of the steam tug Corsair," adopting and reiterating all the allegations contained in the original libel and praying for a citation against the owners, and for an attachment in case they should not be found, against their goods and chattels, credits and effects, wherever found.

Processes of arrest and attachment, in the form provided for by Admiralty Rule 2, was allowed by the district judge and returned served by the marshal by seizing and taking into his possession the steam tug Corsair and placing a keeper in charge, and taking another bond from W. H. Brown & Sons with a surety, conditioned that if "said owners of the tug Corsair, William H. Brown & Sons, Samuel S. Brown, and Harry Brown, shall abide by all orders," etc. On the same day, a claim was filed by Samuel S. Brown and Harry Brown

Page 145 U. S. 338

as sole owners of the tug Corsair, etc. Exceptions were filed to the amended libel by the claimants upon the ground that process had not been served upon them; that a warrant of arrest ought not to have issued under Admiralty Rule 7 without affidavit or other proper proof showing the propriety thereof; that proceedings in rem and in personam could not be joined in the same libel; that

"there was no power in the court to allow the libelants to change this suit from a suit in rem to a suit in personam, and that the cause of action was barred by the prescription of one year, according to the law of the state."

The cause was heard upon these exceptions and, the court

"being of the opinion that the suit and the amended libel is an action under a special statute of the State of Louisiana subjecting the owners to liability, whereas the action under the original libel sprang from the general liability of ships arrested as offending things under the admiralty law, that the amendment introduced a new party, and since at the time of the amendment being made, more than a year had elapsed,"

the exception was allowed, and the suit dismissed.

On appeal to the circuit court, this decree was affirmed, and an appeal taken by the libelants to this Court.

Page 145 U. S. 341

MR. JUSTICE BROWN, after stating the facts in the foregoing language, delivered the opinion of the Court.

This was a libel *in rem* against the tug *Corsair*, by the mother of one Ella Barton, to recover for the loss of her life in a collision alleged to have been occasioned by the negligence of those in charge of the tug. Exceptions to this libel were sustained, upon the ground that a suit *in rem* would not lie for injuries resulting in death, but leave was given to amend by proceeding *in personam* against the owners of the tug. Exceptions were also filed to the amended libel upon the ground that the amendment introduced a new party to the suit, and, as against such party, the year had elapsed within which, under the law, the action must be brought.

1. The decree of dismissal, so far as it operated upon the amended libel, was proper for two reasons: first, the amendment to the original libel, by introducing the owners of the tug as parties defendants, was in violation of Admiralty Rule 15, providing that

"in all suits for damage by collision, the libelant may proceed against the ship and master, or against the ship alone, or against the master or owner alone *in personam*."

These rules, from 12 to 20, inclusive, were intended to prescribe a remedy appropriate to each class of cases in admiralty,

Page 145 U. S. 342

allowing in certain cases a joinder of ship and freight, or ship and master, or alternative actions against the ship, master, or owner alone. In no case, however, under these rules, except in possessory suits, can the ship and owner be joined in the same libel, though perhaps they may be in cases not falling within the rules. These rules were adopted in pursuance of an Act of Congress of August 23, 1842, 5 Sat. 516, authorizing this Court, among other things, to prescribe "the forms and modes of proceedings to obtain relief" in suits in admiralty, and have always been regarded as having the force of law. They are little more than a recognition and formulation of the previous practice of courts of admiralty in this country and in England. They have come before this Court in several instances, and have always been treated as obligatory. Thus, in *Newell v. Norton,* 3 Wall. 257, the district court, in accordance with the prayer of the libel, issued process *in rem* against the vessel for a collision and citations *in personam* against the master, owner, and pilot. On exceptions' being filed for misjoinder, the court ruled that an action against the owner and pilot could not be joined with the proceeding *in rem*, and that the libelant must elect which remedy he would pursue, and he having elected to proceed *in rem* against the steamboat and *in personam* against the master, the libel was dismissed as to the owners and pilot and sustained as against the steamboat and master. The allowance of this amendment was held by this Court to be proper, Judge Grier observing, however, that the objection that a libel *in rem* against a vessel and *in personam* against the "owner" cannot be joined was properly overruled. The word "owner" here is evidently a misprint for "master," as appears from the syllabus and statement of the case on page 259. Rule 19, prescribing the mode of proceeding in cases of salvage, was discussed by Mr. Justice Clifford in the case of *The Sabine*, 101 U. S. 384, in which he said that there was no authority for holding that salvors may proceed against the ship and cargo *in rem* and *in personam* against the consignees of the cargo in the same libel, as the rule gave only an alternative remedy *in rem* against the property saved, or *in personam* against the

Page 145 U. S. 343

party at whose request or for whose benefit the service had been performed. He found there was no well considered authority which gave any countenance to the theory that the two modes of proceeding *in rem* against the ship and cargo, and *in personam* against the owners of the same, might be joined in the same libel, citing *The Boston*, 1 Sum. 328, and *The Hope*, 3 C. Rob. 215. He spoke of the nineteenth rule as

"expressed throughout in the disjunctive form, and plainly requires the action, if against the property saved or the proceeds thereof, the be *in rem*, the alternative clause clearly referring to a case where the property saved has been sold, and the proceeds of the sale have been deposited in the registry of the court."

A like construction has uniformly been given to this rule by the circuit and district courts. *The Richard Doane*, 2 Benedict 111 (MR. JUSTICE BLATCHFORD); *The Zodiac*, 5 F.2d 0, 223 (Judge Choate); *Insurance Co. v. Alexandre*, 16 F.2d 9 (Judge Brown); *The Young American*, Brown's Admiralty 462. Judge Longyear's citations in the last case intimate that a similar practice prevailed in England at least until the adoption of the Judicature Act. 2 Conkling's Admiralty 43; 2 Parsons' Shipping and Admiralty 378.

Second. If the so-called "amended libel" be considered as an independent libel against the owners *in personam*, then it is clearly defective in failing to aver that the respondents were the owners of the tug at the time of the accident.

2. An important question arises in connection with the dismissal of the original libel which has never been squarely presented to this Court before, and that is as to the power of the district court to entertain a libel *in rem* for damages incurred by loss of life where by the local law a right of action survives to the administrator or relatives of the deceased, but no lien is expressly created by the act. A similar question arose in the case of *Ex Parte Gordon*, 104 U. S. 515, where a writ of prohibition was applied for to enjoin the prosecution of an action *in rem* for loss of life, but the writ was denied upon the ground that the liability was within the jurisdiction of

Page 145 U. S. 344

the district court to decide, and any error it might commit in this particular could only be corrected by appeal. Subsequently, in the case of *The Harrisburg*, 119 U. S. 199, it was held that in the absence of an act of Congress or a state statute giving a right of action therefor, a suit in admiralty could not be maintained to recover damages for the death of a human being caused by negligence. This was a mere application to the court of admiralty of a principle which had been announced by this Court as applicable to courts of common law in *Insurance Co. v. Brame*, 95 U. S. 754. The *Harrisburg* was a Pennsylvania vessel, and the collision occurred in the waters of Massachusetts, both of which states gave a remedy by civil action, with a proviso that such action should be brought within one year after the death, and while the question of the right to sue *in rem* for the recovery of such damages, when an action at law had been given therefor by the state statute, was presented in that case, it was

not decided, since the suit was not begun until nearly five years after the death, and the case went off upon that ground.

Prior to this decision, a number of libels both *in rem* and *in personam* had been brought for loss of life in the courts of different districts, and, as a rule, the liability was held to exist, but the question whether such liability should be enforced *in rem* or *in personam* does not seem to have been discussed except in the cases of *The Sylvan Glen*, 9 F.3d 5, and *The Manhasset*, 18 F.9d 8, in one of which Judge Benedict, and in the other Judge Hughes, held that while the state statute created a right, it did not create a lien, and that a libel *in rem* could not be maintained. Since the decision in the *Harrisburg* case, that no libel can lie except where a right to sue is given by a local statute, the question has been presented only in the case of *The North Cambria*, 40 F.6d 5, in which Judge Butler adopted the views expressed in *The Sylvan Glen* and *The Manhassett*. In *The Oregon*, 45 F. 62, a lien was given by the state statute, and was enforced in the admiralty.

A similar question under Lord Campbell's Act, allowing damages to be recovered "whensoever the death of a person

Page 145 U. S. 345

shall be caused by wrongful act, neglect, or default," has been the subject of much discussion in the courts of England. By the Admiralty Court Act of 1861, § 7, jurisdiction was given to the High Court of Admiralty over "any claim for damage done by any ship," and by § 35,

"the jurisdiction conferred by this act on the High Court of Admiralty may be exercised either by proceedings *in rem* or by proceedings *in personam*."

Giving a construction to these provisions, it was held by Sir Robert Phillimore in 1867, in *The Sylph*, L.R. 2 Ad. & Ec. 24, that personal injuries were included by the words "damage done by a ship," and that proceedings *in rem* might be taken for damages occasioned by such injuries. In the subsequent case of *The Guldfaxe*, L.R. 2 Ad. & Ec. 325, the same rule was applied to a suit for damages instituted by the personal representatives of a seaman who had been killed in a collision. This was subsequently affirmed in *The Explorer*, L.R. 3 Ad. & Ec. 289, decided in 1870. The same question came before the court of Queen's Bench upon an application for a writ of prohibition in the case of *Smith v. Brown*, L.R. 6 Q.B. 729 (in 1871), wherein it was held that the word "damage" did not include loss of life and personal injury, and that the admiralty court act conferred no jurisdiction upon the high court of admiralty to entertain a suit under Lord Campbell's act. The judgment of the court in this case was delivered by Lord Chief Justice Cockburn, and concurred in with some doubt by Mr. Justice Blackburn. Notwithstanding this prohibition, however, the Court of Admiralty continued to assume jurisdiction of actions *in rem* brought by the personal representatives of a deceased person. This appears from the case of *The Franconia*, 2 P.D. 163, Sir Robert Phillimore being of the opinion that he was bound by the case of *The Beta*, L.R. 2 P.C. 447, in which the Judicial Committee of the Privy Council had held that the word "damage" referred to injuries to the person as well as to property. On appeal to the Court of Appeal, his judgment was affirmed by a divided court. The question was again raised before the Admiralty Division of the High Court of Justice, in the case of *The Vera Cruz*, 9 P.D. 88, in

Page 145 U. S. 346

which Mr. Justice Butt did not discuss the question, but held, in deference to the previous decisions of Dr. Phillimore, that an action *in rem* would lie by the widow and administratrix of the master of a British schooner against the *Vera Cruz*, and that the plaintiff should recover a moiety of the damage she had sustained, both vessels being adjudged to be in fault. On appeal, the Court of Appeal, 9 P.D. 96, held that it was not bound by its former decision by a divided court in the case of *The Franconia*, and reversed the judgment of the Admiralty Division. The case was again appealed to the House of Lords, and the judgment of the court below was affirmed. 10 App.Cas. 59, 65-67, 73. Lord Chancellor Selborne, in delivering the opinion, held that the thirty-fifth section of the Admiralty Court Act, above cited, showed that

"while an option to proceed *in rem* or *in personam* is given as to the jurisdiction conferred by the act, yet from the very nature of such an option, every case provided for by the act is regarded as a proper case for a proceeding *in rem*, and accordingly the appellant, considering that the seventh section brought cases under Lord Campbell's Act within the purview of the admiralty jurisdiction, justly upon that hypothesis held it to mean such actions as were capable of being brought by a proceeding like the present *in rem*, and if the action cannot be so brought, then I apprehend it will follow, *ex converso*, that the seventh section does not extend to this description of claim. . . . No one can say,"

said he,

"that Lord Campbell's act relates expressly to claims for damage done by ships, and this section in the act of 1861 relates to that and to nothing else. . . . Every word of that legislation [Lord Campbell's Act] being, as it appears to me, legislation for the general case, and not for particular injury by ships, points to a common law action, points to a personal liability and a personal right to recover, and is absolutely at variance with the notion of a proceeding *in rem*."

Lord Watson, concurring, said:

"I entertain no doubt that a right of action such as is given by Lord Campbell's act in a case like the present is not a 'claim for damage done by a ship' within the meaning of the seventh section of the Admiralty Court Act, 1861."

Page 145 U. S. 347

This is the last expression of the highest court of England upon the question of proceeding *in rem* under Lord Campbell's Act, and must be regarded as settling the law of that country that such jurisdiction is not conferred. That, notwithstanding this, an action *in personam* will lie in the

Admiralty Division is evident from the case of *The Bernina,* 11 P.D. 31, in which the Admiralty took cognizance of the case, and upon appeal to the Court of Appeal, 12 P.D. 58, and subsequently to the House of Lords, 13 App.Cas. 1, the jurisdiction was sustained, a trial by jury being now permitted in that court, although the main question discussed was as to the principle involved in the case of *Thorogood v. Bryan,* 8 C. B. 115, which was overruled. While these cases turn upon the construction of the English acts, the courts have been guided in such construction by principles which are of general application both in this country and in England.

A maritime lien is said by writers upon maritime law to be the foundation of every proceeding *in rem* in the Admiralty. In much the larger class of cases, the lien is given by the general admiralty law, but in other instances -- such, for example, as insurance, pilotage, wharfage, and materials furnished in the home port of the vessel -- the lien is given, if at all, by the local law. As we are to look, then, to the local law in this instance for the right to take cognizance of this class of cases, we are bound to inquire whether the local law gives a lien upon the offending thing. If it merely gives a right of action *in personam* for a cause of action of a maritime nature, the district court may administer the law by proceedings *in personam,* as was done with a claim for half pilotage dues under the law of New York in the case of Ex Parte McNiel, 13 Wall. 237, but, unless a lien be given by the local law, there is no lien to enforce by proceedings *in rem* in the Court of Admiralty.

The Louisiana act declares in substance that the right of action for every act of negligence which causes damage to another shall survive, in case of death, in favor of the minor children or widow of the deceased, and in default of these, in favor of the surviving father and mother, and that such survivors

Page 145 U. S. 348

may also recover the damages sustained by them by the death of the parent, child, husband, or wife. Evidently nothing more is here contemplated than an ordinary action according to the course of the law as it is administered in Louisiana. There is no intimation of a lien or privilege upon the offending thing, which, as we have already held, is necessary to give a court of admiralty jurisdiction to proceed *in rem.*

3. We do not find it necessary to express an opinion whether a libel *in rem* will lie for injuries suffered by the deceased before her death, a right of action for which passes to the immediate relatives under the Louisiana statute, since there is no proper averment in the libel to show that such damages were suffered. It is true that the seventh paragraph alleges that from the time the

"tug struck the bank of the river to the time she sunk [about 10 minutes] and the said Ella Barton was drowned, she, said Ella Barton, suffered great mental and physical pains and shock, and endured the tortures and agonies of death."

But there is no averment from which we can gather that these pains and sufferings were not substantially contemporaneous with her death, and inseparable as matter of law from it. *Kearney v. Boston & Worcester Railroad,* 9 Cush. 108; *Hollenbeck v. Berkshire Railroad Co.,* 9 Cush. 478; *Kennedy v. Standard Sugar Refinery,* 125 Mass. 90; *Moran v. Hollings,* 125 Mass. 93. Had she suffered bodily wounds and bruises, from the result of which she lingered, and ultimately died, it is possible that her sufferings during her illness would give a separate cause of action; but the very fact that she died by drowning indicates that her sufferings must have been brief, and, in law, a mere incident to her death. Her fright for a few minutes is too unsubstantial a basis for a separate estimation of damages.

The decree of the court below is therefore

*Affirmed.*

Google        [Search Cases]

US Supreme Court Cases | by Volume | by Year    Oyez Supreme Court Multimedia | Dog Law | US Laws | US Federal Court Appeals Opinions
Blawgs.FM Constitutional Law PodCasts | BlawgSearch.com Constitutional Law Blogs | Lawyer and Legal Aid & Services Directory

Copyright © Justia & Oyez & Forms WorkFlow :: Terms of Service :: Privacy Policy :: Have a Happy Day!